**UNITED STATES of America,**
**Plaintiff,**

v.

**STATE OF ALASKA, Defendant.**

**Civ. No. A–51–63.**

United States District Court
D. Alaska.

June 24, 1964.

Findings of Fact and Conclusions of
Law Aug. 19, 1964.

Warren C. Colver, U. S. Atty., Anchorage, Alaska, Martin Green, Attorney, Department of Justice, Washington, D. C., for plaintiff.

George N. Hayes, Atty. Gen., State of Alaska, Avrum M. Gross, Special Asst. Atty. Gen., State of Alaska, Juneau, Alaska, for defendant.

PLUMMER, District Judge.

This is an action to quiet title to submerged lands, some of which underlie a portion of Yakutat Bay, and the rest of which constitute a part of the continental shelf immediately seaward of the Bay. Yakutat Bay is near the northern end of the Alaska panhandle, and is approximately seventeen geographical miles wide at its entrance. Point Manby and Ocean Cape form the natural entrance points to the Bay; from a line connecting these points, the Bay extends inland approximately thirty geographical miles.

The State of Alaska claims title to all of the lands underlying the waters of Yakutat Bay, from the line of mean high tide of the shores of the Bay out to the line—which for convenience may be called the seventeen mile closing line of the Bay—stretching between Point Manby and Ocean Cape. In addition, the State claims title to the submerged lands underlying a belt of waters extending three geographical miles seaward of the seventeen mile closing line.

The State's claim to these lands is premised on its contention that when Alaska was admitted into the Union of States that the limits of the internal or inland waters in bays, the coasts of which belonged to a single state, were determined by the use of a base line or closing line of twenty-four miles instead of a base line or closing line of ten miles.

The United States does not dispute the title of the State of Alaska to that portion of the bed of Yakutat Bay lying between the opposing shores of the Bay out to where those shores, from low water line to low water line, are not more than ten geographical miles apart; that is, the United States acknowledges the State's title to the bed of Yakutat Bay out to a ten mile closing line.

Also, the United States does not dispute the title of the State of Alaska to the lands underlying a belt of territorial waters extending three geographical miles seaward of the shores and ten mile closing line of Yakutat Bay. But the United States does deny that the State of Alaska has any rights, title, or interest in any of the submerged lands beyond the three mile belt adjacent to the ten mile closing line of Yakutat Bay, and to the contrary asserts that the United States is the owner of, or is possessed of paramount rights in and powers over, all of the submerged lands of the continental shelf lying more than three geographical miles seaward of the line of mean low water of the shores and ten mile closing line of Yakutat Bay.

On July 12, 1963, the State of Alaska, through its Department of Natural Resources, published notice of its intention to accept sealed bids for competitive oil and gas leases covering 193,645 acres of land underlying the waters of Yakutat Bay. Some of the lands offered for lease are claimed by the United States. On July 23, 1963, the United States filed in this court an action to quiet title to, and to enjoin trespasses on, the lands it claims. On the same day, a motion for a preliminary injunction to restrain the State from leasing or attempting to lease the submerged lands claimed by the United States was filed, and, being unopposed, was granted. On July 26, 1963,

the State of Alaska filed its answer to the Government's complaint. On October 9, 1963, the United States moved for summary judgment. On December 19, 1963, the State moved for summary judgment.

By a stipulation filed in this action on September 3, 1963, the United States and the State of Alaska have agreed that the line described by metes and bounds in the Government's complaint is the ten mile closing line of Yakutat Bay.

By the stipulation filed on September 3, 1963, the United States and the State of Alaska have agreed that the line between Point Manby and Ocean Cape referred to in the State's answer is the line between the natural entrance points of Yakutat Bay, and is approximately seventeen geographical miles in length.

The submerged lands put in issue by the pleadings thus extend from a line three geographical miles seaward of the shores and ten mile closing line of Yakutat Bay to a line three geographical miles seaward of the seventeen mile closing line of the Bay. This is an area of approximately 96,000 acres.

The crucial issue to be determined in this case is the extent of inland waters of the State of Alaska as defined by section 2 of the Statehood Act.

The court, upon the reasoning and authorities cited in plaintiff's memorandum in support of plaintiff's motion for summary judgment filed October 9, 1963, and plaintiff's memorandum in opposition to defendant's motion for summary judgment filed February 3, 1964, finds as follows:

1. At the time of the admission of Alaska into the Union on January 3, 1959, and until March 24, 1961, the United States maintained its traditional position that, with exception of historic bays, the waters within a bay, the coasts of which belonged to a single state, were considered internal waters if the distance between the low-water marks of the natural entrance points of the bay did not exceed ten geographical miles.

2. On March 24, 1961, the President of the United States, with the approval of the Senate, ratified the Convention on the Territorial Sea and Contiguous Zone adopted at the First Law of the Sea Conference at Geneva in 1958, which Convention had the approval of the government of the United States and since its ratification is expressive of its present foreign policy.

3. At all times herein material, plaintiff was and now is the owner in fee simple of, or possessed of paramount rights in and powers over, the lands, minerals, and other natural resources underlying the coastal waters of Alaska at Yakutat Bay, between Point Manby and Ocean Cape, lying more than three geographical miles seaward from the line of mean low water of the mainland or any island and from lines connecting the following points at mean low-water line:

> From the northernmost extremity of Point Carrew to the westernmost extremity of Point Munoz;
>
> From the northernmost extremity of Khantaak Island to the westernmost extremity of Knight Island; and
>
> From the westernmost extremity of Knight Island, extending ten geographical miles in a northwesterly direction to the northwestern shore of Yakutat Bay;

and extending seaward to the edge of the continental shelf.

4. Plaintiff is entitled to summary judgment granting the relief requested in the prayer of the complaint filed on July 27, 1963.

5. Defendant's motion for summary judgment should be denied.

Pursuant to Court Rule 14 of the Rules of the United States District Court for the District of Alaska counsel for plaintiff is directed to prepare and submit appropriate findings of fact and conclusions of law and a proposed form of judgment within twenty (20) days from the date of this decision.

The Clerk will not enter judgment until the form thereof has been approved by the court.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having considered in the above-entitled case the pleadings, stipulation, motions for summary judgment and briefs filed by both parties, as well as matters of which the Court may take judicial notice, and the oral arguments made on March 13, 1964, by both the plaintiff and the defendant with respect to the motions for summary judgment, and being fully advised in the premises, the Court hereby makes findings of facts and states conclusions of law as follows:

### FINDINGS OF FACT

1. On July 27, 1963, the United States filed a complaint to quiet title to certain submerged lands lying off the coast of Alaska, and to enjoin the State of Alaska from leasing, or offering to lease, the mineral resources contained within the submerged lands. The jurisdiction of this Court is invoked under 28 U.S.C. § 1345.

2. The United States moved for summary judgment on October 9, 1963; the State of Alaska moved for summary judgment on December 19, 1963.

3. Yakutat Bay, an indentation in the coast of Alaska near the northern end of the Alaska "panhandle", is, between Point Manby and Ocean Cape, which form its natural entrance points, approximately seventeen geographical miles in width. The configuration of the Bay is shown on Coast and Geodetic Survey Chart Number 8455.

4. A line drawn between the low water lines of the opposing shores of Yakutat Bay at the point where the Bay is ten geographical miles in width would extend from a point approximately two thousand five hundred yards southwest of Blizhni Point on the northwestern shore of Yakutat Bay in a southeasterly direction to the westernmost extremity of Knight Island, at which point it would close upon a line drawn from the north-ernmost extremity of Khantaak Island to the westernmost extremity of Knight Island, which line, together with a line drawn from the westernmost extremity of Point Munoz to the northernmost extremity of Point Carrew, would complete the ten mile closing line of the Bay.

5. The court judicially knows the matters set forth in the affidavit submitted in the present action by Raymund T. Yingling, Assistant Legal Adviser, Office of the Legal Adviser, United States Department of State, the pertinent portions of which are here set forth in full:

"2. At the time of the admission of Alaska into the Union on January 3, 1959, and until March 24, 1961, the United States maintained its traditional position that, with the exception of historic bays, the waters within a bay, the coasts of which belong to a single State, shall be considered internal waters if the distance between the low-water marks of the natural entrance points of the bay do not exceed ten geographical miles.

"3. On March 24, 1961, the President of the United States, with the approval of the Senate, ratified the Convention on the Territorial Sea and Contiguous Zone adopted at the First Law of the Sea Conference at Geneva in 1958, which Convention has the approval of this Government and is expressive of its present foreign policy. Paragraphs 4, 5 and 6 of Article 7 of the Convention read in part as follows:

"4. If the distance between the low-water marks of the natural entrance points of a bay does not exceed twenty-four miles, a closing line may be drawn between these two low-water marks, and the waters enclosed thereby shall be considered as internal waters.

"5. Where the distance between the low-water marks of the natural entrance points of a bay exceeds t w e n t y - f o u r

miles, a straight baseline of twenty-four miles shall be drawn within the bay in such a manner as to enclose the maximum area of water that is possible with a line of that length.

"6. The foregoing provisions shall not apply to so-called 'historic bays' * * *.

"4. Yakutat Bay is not an historic bay, and at the date of the admission of Alaska into the Union, the only waters of Yakutat Bay claimed by the United States as internal waters were those waters landward of a line drawn between the low-water lines of the opposing shores of Yakutat Bay at a point where the Bay was ten geographical miles in width, and the water of Yakutat Bay claimed by the United States as internal waters since March 24, 1961, are the waters landward of a line drawn between the low-water lines of the natural entrance points of Yakutat Bay."

6. The affidavit of Raymund T. Yingling, Assistant Legal Adviser, Office of the Legal Adviser, United States Department of State, is an official statement of the past and present policies of the Executive Branch of the government with respect to the determination of the internal waters of the United States in bays.

7. The Court further finds that in

(a) the unratified treaty of February 15, 1888, S.Misc.Doc.No. 109, 50th Cong., 1st sess. (1888)

the Executive Branch of the Government recognized and expressed a willingness to comply with the then developing practice of nations to delimit their internal waters in nonhistoric bays not exceeding ten geographical miles in width by drawing a straight line across the opening of the bay, and, where the opening of the bay exceeded ten geographical miles in width, by drawing a straight line across the opening at the most seaward point

where its width did not exceed ten geographical miles,

and that in

(b) the proceedings before the Alaska Boundary Tribunal, 7 Alaska Boundary Arbitration, S.Doc. No. 162, 58th Cong., 2d sess. (1904), p. 844

the United States position was that a ten mile closing line drawn in the manner above described delimited the greatest area of a nonhistoric bay which under then existing international law might be assimilated into the internal waters of a nation,

and that in the following acts and documents, the use of the ten mile rule for delimiting the internal waters of a nation was stated to be the official practice of the United States:

(c) The Hague Conference of 1930, Acts of Conference for the Codification of International Law, The Hague (1930), pp. 197–199;

(d) the letter of November 13, 1951, from the Acting Secretary of State to the Attorney General, Hearings, S. Committee on Interior and Insular Affairs, S.J. Res. 13, 83d Cong., 1st sess. (1953), p. 460;

(e) the letter of February 12, 1952, from the Secretary of State to the Attorney General, Hearings, S. Committee on Interior and Insular Affairs, S.J.Res.13, 83d Cong., 1st sess. (1953), p. 462;

(f) the testimony on March 3, 1953, of the Deputy Legal Adviser of the Department of State before the Senate Committee on Interior and Insular Affairs, Hearings, S. Committee on Interior and Insular Affairs, S.J.Res.13, 83d Cong., 1st sess. (1953), p. 1052;

(g) the letter of March 4, 1953, from the Assistant Secretary of State to the Chairman of the Senate Committee on Interior and Insular Affairs, Hearings, S. Com-

mittee on Interior and Insular Affairs, S.J.Res.13, 83d Cong., 1st sess. (1953), p. 27;

(h) the note verbale of March 12, 1956, of the United States to the United Nations, 2 Yearbook of the International Law Commission, 1956, A/CN.4/SER. A/1956/Add. 1, p. 94; and

(i) the statement on April 15, 1958, of a member of the United States delegation to the Geneva Conference on the Law of the Sea before the Committee on the Territorial Sea and Contiguous Zone, 3 Official Records, United Nations Conference on the Law of the Sea, A/CONF. 13/39, pp. 144, 242.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of this action under 28 U.S.C. § 1345.

2. Section 2 of the Alaska Statehood Act of July 7, 1958, 72 Stat. 339, provides that:

"The State of Alaska shall consist of all the territory, together with the territorial waters appurtenant thereto, now included in the Territory of Alaska."

3. Section 8(b) of the Alaska Statehood Act of July 7, 1958, 72 Stat. 343–344, provides that:

"At an election designated by proclamation of the Governor of Alaska, which may be the general election held pursuant to subsection (a) of this section, or a Territorial general election, or a special election, there shall be submitted to the electors qualified to vote in said election, for adoption or rejection, by separate ballot on each, the following propositions:

"(1) Shall Alaska immediately be admitted into the Union as a State?

"(2) The boundaries of the State of Alaska shall be as prescribed in the Act of Congress approved (date of approval of this Act) [i. e., July 7, 1958] and all claims of this State to any areas of land or sea outside the boundaries so prescribed are hereby irrevocably relinquished to the United States.

"(3) * * *

"In the event any one of the foregoing propositions is not adopted at said election by a majority of the legal votes cast on said submission, the provisions of this Act shall thereupon cease to be effective."

4. Section 6(m) of the Alaska Statehood Act of July 7, 1958, 72 Stat. 343, provides that:

"The Submerged Lands Act of 1953 (Public Law 31, Eighty-third Congress, first session; 67 Stat. 29) shall be applicable to the State of Alaska and the said State shall have the same rights as do existing States thereunder."

5. Section 4 of the Submerged Lands Act of 1953, 43 U.S.C. § 1312, provides in part that:

"The seaward boundary of each original coastal State is approved and confirmed as a line three geographical miles distant from its coast line or, in the case of the Great Lakes, to the international boundary. Any State admitted subsequent to the formation of the Union which has not already done so may extend its seaward boundaries to a line three geographical miles distant from its coast line * * *."

6. Section 2(c) of the Submerged Lands Act of 1953, 43 U.S.C. § 1301(c) provides that:

"The term 'coast line' means the line of ordinary low water along that portion of the coast which is in direct contact with the open sea and the line marking the seaward limit of inland waters."

7. Section 3 of the Submerged Lands Act of 1953, 43 U.S.C. § 1311, provides in part that:

"(a) It is determined and declared to be in the public interest that (1) title to and ownership of the lands beneath navigable waters within the boundaries of the respective States, and the natural resources within such lands and waters * * * be, and they are, subject to the provisions hereof, recognized, confirmed, established, and vested in and assigned to the respective States * * *."

8. Section 9 of the Submerged Lands Act of 1953, 43 U.S.C. § 1302, provides that:

"Nothing in this chapter shall be deemed to affect in any wise the rights of the United States to the natural resources of that portion of the subsoil and seabed of the Continental Shelf lying seaward and outside of the area of lands beneath navigable waters, as defined in section 1301 of this title, all of which natural resources appertain to the United States, and the jurisdiction and control of which by the United States is confirmed."

9. Section 3 of the Outer Continental Shelf Lands Act of 1953, 43 U.S.C. § 1332, provides in part that:

"(a) It is declared to be the policy of the United States that the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition as provided in this subchapter."

10. Alaska was admitted into the Union on January 3, 1959, 73 Stat. C–16, 48 U.S.C.A. note preceding § 21.

11. Sections 4, 5 and 6 of Article 7 of the Convention on the Territorial Sea and Contiguous Zone adopted by the United Nations Conference on the Law of the Sea at Geneva on April 29, 1958, signed by the United States delegate to the Convention on September 15, 1958, and ratified by the President of the United States on March 24, 1961, 2 International Legal Materials, p. 527 (May 1963), provide that:

"4. If the distance between the low-water marks of the natural entrance points of a bay does not exceed twenty-four miles, a closing line may be drawn between these two low-water marks, and the waters enclosed thereby shall be considered as internal waters.

"5. Where the distance between the low-water marks of the natural entrance points of a bay exceeds twenty-four miles, a straight baseline of twenty-four miles shall be drawn within the bay in such a manner as to enclose the maximum area of water that is possible with a line of that length.

"6. The foregoing provisions shall not apply to so-called 'historic bays' * * *."

■ 12. In the absence of specific Congressional action to the contrary, the internal waters of the State of Alaska are those waters which on the date of the admission of the State of Alaska into the Union were recognized by the Executive Branch of the government in its dealings with foreign nations to be the internal waters of the United States and the Territory of Alaska.

■ 13. A statement by a duly authorized official of the State Department as to the policy of the Executive Branch of the Government, either at the present time or in the past, in claiming internal waters for the United States as against other countries in its international dealings, is subject to judicial notice, and is binding upon this Court.

14. The affidavit submitted in this case by the Assistant Legal Adviser of the State Department establishes that at the time of the admission of Alaska into the Union on January 3, 1959, and until

March 24, 1961, the United States maintained its traditional position that, with the exception of historic bays, the waters within a bay, the coasts of which belong to a single State, were considered internal waters if the distance between the low-water marks of the natural entrance points of the bay did not exceed ten geographical miles.

15. However, even were the policy statement of the Assistant Legal Adviser of the State Department not binding on the Court, and independently of it, the Court concludes, on the basis of the matters set forth in paragraph 7 of the findings of fact, that at the time of the admission of Alaska into the Union on January 3, 1959, and until March 24, 1961, when the President ratified the Convention on the Territorial Sea and Contiguous Zone, the Executive Branch of the Government, in its dealings with foreign countries, maintained its traditional position that, with the exception of historic bays, the waters within a bay, the coasts of which belonged to a single nation, were the internal waters of a nation out to the most seaward point where the distance between the low water marks of the opposing shores did not exceed ten geographical miles.

16. Congress has not, since the date of Statehood, extended the limits of the internal waters of Alaska, and, in the absence of such Congressional change, the internal waters of the State of Alaska remain what they were upon the passage by the Congress of the Alaska Statehood Act of July 7, 1958.

17. Consequently, the limits of the internal waters of the State of Alaska in Yakutat Bay extend only to a line drawn across the Bay at the most seaward point where the distance between the low water marks of the opposing shores of the Bay does not exceed ten geographical miles.

18. The State of Alaska has title to all of the submerged lands landward of the ten mile closing line of Yakutat Bay, and to all the lands and natural resources underlying a belt of territorial sea three geographical miles in width immediately adjacent to and seaward of the ten mile closing line of Yakutat Bay.

19. The submerged lands of the continental shelf lying more than three geographical miles seaward of the ten mile closing line of Yakutat Bay appertain to the United States and are subject to its exclusive jurisdiction and control.

20. The United States is entitled to summary judgment granting the relief requested in the prayer of the complaint filed on July 27, 1963.

21. Defendant's motion for summary judgment should be denied.

Let judgment be entered accordingly.